IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 13, 2015 Session

## STATE OF TENNESSEE v. BRANDEN MICHAEL TOTH

**Appeal from the Criminal Court for Washington County**
**No. 37796    Jon Kerry Blackwood, Judge**

_____

**No. E2015-00022-CCA-R3-CD – Filed March 9, 2016**

_____

Defendant, Branden Michael Toth, appeals after a jury found him guilty of one count of theft of property valued at $60,000 or more and five counts of theft of property valued at $10,000 or more. Defendant was sentenced to an effective sentence of twelve years in incarceration. On appeal, Defendant challenges the trial court's failure to charge lesser-included offenses, the trial court's handwritten notations on the verdict forms, the trial court's failure to dismiss Count 4 of the indictment, the sufficiency of the evidence, and his sentence. After a review, we determine that the trial court dismissed the original Count 5, renumbered the remaining counts of the indictment (Count 7 became Count 6, Count 6 became Count 5) and submitted Count 4 to the jury on a lesser-included offense. Consequently, we affirm the convictions. On remand, the trial court should correct the judgment form in Count 3 to reflect a conviction of theft of property valued at $60,000 or more, hold a hearing on restitution, and correct the offense dates in Counts 5 and 6 to December 16, 2009 and January 2, 2010, respectively. Accordingly, the convictions are affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Randall E. Reagan (on appeal), Morristown, Tennessee, and James T. Bowman (at trial), Johnson City, Tennessee, for the appellant, Branden Michael Toth.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Tony Clark, District Attorney General; and Ken Baldwin, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual and Procedural Background*

This is Defendant's direct appeal of several convictions for theft which he wrought upon four trusting investors in Washington County. The proceedings in the trial court, beginning with three separate charging instruments with various conflicting counts, are somewhat baffling at first glance. Upon our review, we have managed to sort out the pieces.

Defendant claimed to be a real estate investor promising amazing returns on investments in properties Defendant had supposedly purchased and planned to renovate prior to reselling them to someone else. He befriended three men—Hanes Torbett, Joe Reid, and Charles Backus. He used their shared religious kinship to convince them to "invest" nearly $300,000 over the course of several months in late 2009 and early 2010. None of the investors ever saw a return on their investment or any concrete proof that the real estate transactions existed. Eventually, in March of 2012, the Washington County Grand Jury returned a four count presentment in Case 37796 on two counts of theft of property in an amount of $10,000 or more and less than $60,000, and two counts of theft of property in an amount of $60,000 or more. Count 1 pertained to victim Joe Reid; Counts 2 and 3 pertained to victim Hanes Torbett, and Count 4 pertained to victims Charles and Elizabeth Backus.[1]

In January of 2013, the grand jury issued a superseding indictment in Case 37796. The indictment contained six counts, four counts for theft of property valued at $10,000 or more and less than $60,000 and two counts for theft of property valued at $60,000 or more. Count 1 pertained to victim Joe Reid, Counts 2 and 3 pertained to victim Hanes Torbett, and counts 3, 4, and 5 pertained to victims Charles and Elizabeth Backus. In September of 2013, a superseding re-indictment was issued by the grand jury in Case 37796, charging Defendant with seven offenses. Defendant was charged in the re-indictment as follows:

---

[1] Defendant filed a motion to sever the offenses for trial after the presentment but before the January 2013 indictment was issued. In the transcript of the hearing on the motion to sever, the trial court determined that Count 4 would be severed from Counts 1, 2, and 3 because a portion of that proof involved different real estate. There is no order granting the motion to sever but a minute entry from October 29, 2012 indicates: "Counts 1, 2, 3 together. Count 4 is severed."

| Count | Offense | Victim | Amount | Offense Date |
|---|---|---|---|---|
| 1 | Theft of property $10,000 or more, but less than $60,000 | Joe Reid | $10,000 | 10/9/2009 |
| 2 | Theft of property $10,000 or more, but less than $60,000 | Hanes Torbett | $40,000 | 10/7/2009 |
| 3 | Theft of property $60,000 or more | Hanes Torbett | $130,000 | 10/20/2009 |
| 4 | Theft of property $60,000 or more | Charles & Elizabeth Backus | $40,000 | 11/4/2009 |
| 5 | Theft of property $10,000 or more, but less than $60,000 | Charles & Elizabeth Backus | $15,000 | 11/4/2009 |
| 6 | Theft of property $10,000 or more, but less than $60,000 | Charles & Elizabeth Backus | $25,000 | 12/16/2009 |
| 7 | Theft of property $10,000 or more, but less than $60,000 | Charles & Elizabeth Backus | $35,000 | 1/2/2010 |

After the re-indictment was issued, the case proceeded to trial. At the opening of trial during the reading of the indictment, the assistant district attorney read to the jury Counts 1, 2, 3, 4, 6, and 7 of the indictment. At that time, neither the trial court nor the parties commented on the fact that Count 5 was omitted from the reading of the indictment.[2]

The following proof was presented at trial. Hanes Torbett and Joe Reid grew up as best friends living next door to each other. Their fathers were also best friends. The two men were also good friends with Charles Backus, an emergency room doctor. Dr. Backus and Mr. Torbett "developed a friendship" in part because they both had four children of similar ages. All three men attended church together and Mr. Torbett and Mr. Reid played basketball together.

Mr. Torbett owned an employee benefits company dealing primarily with insurance. He managed the employee benefits for more than thirty small companies at the time of trial. He started the business in 2003. Things were slow going for his business at start up, so Mr. Torbett and a friend bought some property in Pigeon Forge, Kingsport, and Johnson City in order to try to create some "[e]xtra income to help [him] as [he] was starting [his] insurance company." The Pigeon Forge property was purchased by Mr. Torbett and Mr. Reid. The other two homes were purchased by Mr. Torbett and a friend named Eric Kessner. One house was sold but two others were just "sitting," including the Pigeon Forge property that was owned by Mr. Reid and Mr. Torbett. Mr.

---

[2] In fact, at oral argument in this Court, appellate counsel for Defendant commented, "I've looked through the record trying to find this. Where did Count 5 go? I cannot find it anywhere." Appellate counsel did not represent Defendant at trial.

Kessner told Mr. Torbett in 2009 that he could not afford to keep the properties any longer without selling them. Mr. Torbett put an ad in the paper to rent out the largest house. Defendant answered the ad to rent the house for $3000 a month. Defendant eventually also rented office space from Mr. Torbett.

Defendant told Mr. Torbett that he was from Charlottesville, Virginia, and that he was a "real estate developer and flipped houses." Defendant explained to Mr. Torbett that he bought real estate foreclosures and had a team of people that would go in and fix up the houses before he flipped them for a profit. The only time Mr. Torbett ever saw any evidence that Defendant was actually a real estate developer was when Defendant's wife showed him a picture of a house in North Carolina on a computer at their house which Defendant claimed to have flipped. Defendant claimed he made $400,000 flipping a house in Charlottesville after he bought it at a foreclosure sale.

Mr. Torbett described Defendant as personable, noting that he had a lot in common with Defendant and that they immediately hit it off. They played basketball together and Mr. Torbett invited him to go to church with his family. Mr. Torbett and Defendant were "just communicating a lot." Mr. Torbett "felt sorry for him 'cause [he] felt like [Defendant] didn't know anybody in town and [he] knew people." Admittedly a "trustworthy person," Mr. Torbett thought Defendant was a "nice guy." Defendant joined him in his morning devotions at work.

Mr. Torbett trusted Defendant, sharing with him the struggles of his personal life, including the debt he was in on the houses he owned. Mr. Torbett sought advice from Defendant. Defendant offered to help by offering a deal in early October on "eight townhouses in Iowa where . . . his sister and brother-in-law lived." Defendant explained that one of his relatives would manage the project and that it was an "easy flip." Defendant claimed he had already sold the properties to companies named ICG and Bluefield and that he just needed money to "float" the loan for sixty days for his crew to go in and "dress up" the properties. Mr. Torbett wrote a check for $40,000 to CMD Assets on October 7, 2009, from his home equity line of credit and gave it to Defendant. In turn, Defendant issued a promissory note to Mr. Torbett in which CMD Assets promised to pay $75,000 after sixty days. Defendant told Mr. Torbett that he was CMD Assets and that he had a "bunch of LLC's." The amount to be repaid on the note was changed to $80,000, then to $85,000, and eventually to $100,000. "Every time that [Defendant] was delaying that the money wasn't coming in after sixty days he kept saying I'll give you more, more, and more of mine."

On October 20, 2009, Defendant convinced Mr. Torbett to invest in another deal by purchasing "eighty-six small houses" for $130,000. Defendant explained that he was pulling together a list of investors for the project. Mr. Torbett trusted Defendant and did not ask to see any deeds or paperwork for any of the transactions. He wrote a check for

$115,000 from his home equity line of credit to Brownstone Park Development, LLC, and a personal check for $15,000 to Brownstone Park Development, LLC. Defendant again gave Mr. Torbett a promissory note to memorialize the deal. On the promissory note for $130,000, Defendant agreed to "return amount payable in an unpaid principal amount of ten thousand per unit at forty-three units for a total payment due back to lender four hundred and thirty thousand" in 90 days. When Mr. Torbett presented the large checks to Defendant, he asked Defendant to pray for the transaction. The two men prayed together that the transaction would be successful.

Mr. Torbett introduced Defendant to his friends Mr. Reid and Dr. Backus. He thought that Defendant had presented him with "a good deal" and that his friends would want to get in on it. Mr. Reid and Defendant met at Mr. Reid's office where Defendant presented Mr. Reid with information on the deal with the eight townhouses in Iowa. Mr. Reid, a physician's assistant, wrote a $10,000 check on October 9, 2009 to CMD Assets in order to get a return of $17,500 in two months. Defendant signed a promissory note memorializing the agreement. The address for CMD Assets was the same as the address for Defendant's personal residence.

Two months after his initial investment, sometime around December, Mr. Reid started asking Defendant when the money would be repaid. Mr. Reid explained that he initially wrote the check from his business account but ultimately transferred money from his personal account to his business account to repay the company. Mr. Reid sent text messages to Defendant repeatedly over the course of a few weeks to ask him if the money was ever going to be repaid. Defendant had multiple excuses but never repaid the money.

Dr. Backus, an emergency room doctor, was also introduced to Defendant by Mr. Torbett. At the time they met, Dr. Backus and his wife Elizabeth Backus were in the process of building a house. She went with her husband to meet Defendant. Dr. Backus explained to Defendant that he was doing a lot of the work on his house by himself. Defendant offered his expertise and consulted with Dr. Backus on many details in the new house. The two became friends and had what Dr. Backus described as "very personal conversations" about religion and personal things.

Defendant described a project in Rome, New York. Defendant also told the doctor he was buying 86 units wholesale in Maryland that were "pretty much . . . already sold," but the "company that was going to buy them was . . . out of money for the year." Dr. Backus wrote a check for $40,000 on November 4, 2009, to Brownstone, LLC. Defendant told Dr. Backus that he was the only "member" of that company. Dr. Backus took the money out of his retirement account. Defendant gave Dr. Backus a promissory note promising 100% return of the investment in two months plus another $40,000.

On December 16, 2009, Dr. Backus wrote another check to Defendant. This time the check was in the amount of $25,000 and was made out to Capstone Real Estate and Development. Dr. Backus believed that this check was to start a partnership with Defendant so that Defendant could teach Dr. Backus about real estate. Dr. Backus made a notation on the check that it was for "a new start."

After some time, Dr. Backus had not received any money from Defendant. When Dr. Backus inquired about the whereabouts of the money, Defendant claimed that there were "little glitches" that held up the progress of the real estate transactions. By that time, Dr. Backus became suspicious because he was aware that Mr. Torbett had not yet been repaid on his initial investment. Defendant assured Dr. Backus that the money would arrive in February. Defendant continued to help Dr. Backus with the building of his new home during this time.

On January 2, 2010, Dr. Backus wrote a $35,000 check to CMD Assets. Dr. Backus understood this to be the company that was handling Mr. Torbett's investment. Dr. Backus, thinking that he was in a partnership with Defendant, wrote the check to the company so that Mr. Torbett could get some of his money back. Dr. Backus explained that he still trusted Defendant and that is why he wrote the check to the company rather than writing the check directly to Mr. Torbett.

Dr. Backus became increasingly suspicious of Defendant's behavior when he failed to receive any payments, leading him to eventually tell Mr. Torbett that he had written a check to CMD Assets for Mr. Torbett's benefit. Mr. Torbett informed Dr. Backus that he never received any money from Defendant or CMD Assets. Dr. and Mrs. Backus even confronted Defendant at his office, insisting that he produce "hard copy proof" of the real estate transactions. Defendant claimed that he could not find any paperwork at that time. At the end of January, Defendant left town and went to Charlotte, North Carolina. Defendant explained to Dr. Backus that he moved because things got "too heated." At first, they talked regularly, then communicated by text message only. Defendant eventually stopped communicating altogether. Defendant later moved from North Carolina to Maryland.

Defendant kept delaying repayment to Mr. Torbett, finally telling him sometime around January, that an investor named "David Orr" was sending a check. Defendant initially claimed that the check was mailed, then claimed the check was faxed, and then claimed Mr. Orr never mailed the check because he was on a trip with his mistress. Defendant next claimed that Mr. Orr needed more time before he would make payment. Next, Defendant sent Mr. Torbett what purported to be a copy of an email sent by Defendant to Mr. Orr. Defendant then sent Mr. Torbett a copy of what he claimed to be a letter sent to Mr. Orr in which Defendant asked for "payment in full of the sold properties."

The State called David Orr to testify at trial. Mr. Orr testified that he owned real estate development and construction management businesses named David Orr Associates and Orr Partners, LLC, in the Washington, D.C., metropolitan area. Mr. Orr had been in business for twenty-six years. He stated that he had never met the Defendant. Mr. Orr was shown a letter written by Defendant that was purportedly sent to Mr. Orr. According to Mr. Orr, he had never seen and did not receive that letter.

Mr. Torbett described Defendant's lifestyle, noting that he used large amounts of money to purchase electronic items such as televisions and furniture for the home he was renting from Mr. Torbett for $3000 a month. Defendant also went from driving a Honda to driving a BMW 650. Defendant received mail at the rented home which was addressed to Brownstone Park. Mr. Torbett had also received emails from Defendant that were signed "Branden Toth, Brownstone Park Development, LLC."

At the conclusion of the proof, Defendant made a motion for judgment of acquittal as to Count 4. The State conceded at that time that there was a "variance in the indictment" which read as follows:

> CHARGE: THEFT OVER $60,000 OR MORE
> And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present that BRANDEN MICHAEL TOTH, on or about the 4th day of November, 2009, in the State and County aforesaid, did unlawfully, commit the offense of theft of property by knowingly obtaining or exercising control over property in the amount of sixty thousand dollars ($60,000) or more, to wit, *monies totaling forty thousand dollars ($40,000)* the property of Charles and Elizabeth Backus and without the owners' effective consent and with the intent to deprive the owners thereof, a class B felony, in violation of Section 39-14-103 of the Tennessee Code Annotated, and against the peace and dignity of the State of Tennessee.

(Emphasis added). The trial court then commented that the "proof is that the amount was forty thousand dollars. So that has to be granted from - - it's only ten to sixty thousand." Defendant then sought a motion for judgment of acquittal as to Count 6, arguing that Dr. Backus was not certain where the money went and whether part of it was actually used to run the business he thought he created with Defendant. The trial court reserved ruling on the motion for judgment of acquittal with respect to Count 6.

At the beginning of the jury charge, the trial court informed the jury that they would be presented with 6 verdict forms. The trial court described the verdict forms as follows:

For your benefit in this case above the verdict form Count 1 charges the defendant with the offense of theft of ten thousand dollars or more, but less - - not more than sixty thousand dollars. That's the same amount charged in Count 2 of the indictment and I've written for that on the verdict form for you to refer to.[3] The Count in Number 3 is sixty thousand dollars - - or theft of sixty thousand dollars or more. And in Count 4, 5, and 6 I have written for your benefit that the alleged theft occurred - - the alleged theft was in the amount of ten thousand dollars or more, but not more than sixty thousand dollars.

The jury returned a verdict of guilty in Counts 1, 2, 3, 4, and 6. The jury returned a not guilty verdict in Count 5.

Defendant filed a motion for new trial. In the motion, he challenged the sufficiency of the evidence with respect to his convictions in Counts 1, 2, 3, 4, and 6 and the denial of a jury instruction pertaining to evidence of "any prior agreement or of a contemporaneous agreement to contradict the terms of a written agreement between the parties." Defendant also argued that the convictions should have been merged because the conduct was "a single, continuous act." The trial court denied the motion for new trial.

At a sentencing hearing, Defendant was sentenced to four years on Count 1, four years on Count 2, twelve years on Count 3, four years on Count 4, and four years on Count 6. The sentences were ordered to be served concurrently, for a total effective sentence of twelve years "to serve" as a Range I, standard offender. The trial court did not order restitution.

Defendant filed a timely notice of appeal. After the notice of appeal was filed, the State filed a motion to amend the judgment based on the trial court's failure to order restitution. Defendant filed a response to the motion in which he argued that the trial court no longer had jurisdiction over the matter after the filing of the notice of appeal.

*Analysis*

On appeal, Defendant raises the following issues: (1) whether the State committed prosecutorial misconduct during closing argument; (2) whether the trial court erred in failing to charge lesser-included offenses; (3) whether the trial court erred by including

---

[3] The trial court handwrote the range of the re-indictment counts on each verdict form. For example, the verdict form in Count 1 had "$10,000 but not more than $60,000" handwritten at the top with the caption.

- 8 -

handwritten information on the verdict forms; (4) whether the evidence is sufficient to support the convictions; and (5) whether the sentence is excessive.

## I. Prosecutorial Misconduct

Defendant alleges that counsel for the State engaged in improper closing argument by making personal attacks on defense counsel, misstating the evidence, arguing for a verdict of guilty based on general deterrence, making statements calculated to inflame the passions of the jury, improperly arguing the missing witness inference, misleading the jury about the burden of proof, and intentionally referring to or arguing facts outside the record. The State submits that Defendant has waived the issue for failure to raise it in a motion for new trial. We agree with the State.

Defendant has raised the issue with respect to the prosecutor's allegedly improper comments during closing argument for the first time on appeal. "[N]o issue presented for review shall be predicated [on] . . . [a] ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial." Tenn. R. App. P. 3(e).

Despite the waiver, we may still review the issue for plain error. The Tennessee Rules of Criminal Procedure explain that "plain error[,] . . . [a]n error which has affected the substantial rights of an accused[,] may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(b). The supreme court has held that "[w]hether or not an appellate court should recognize the error and grant relief . . . depend[s] upon the facts and circumstances of the particular case." *State v. Ogle*, 666 S.W.2d 58, 61 (Tenn. 1984).

In *State v. Smith*, 24 S.W.3d 274 (Tenn. 2000), the supreme court adopted the test established in *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994), to determine whether a trial error rises to the level of "plain error." *Smith*, 24 S.W.3d at 282-83. *Adkisson* held that the following five factors must be present for a finding of plain error:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

899 S.W.2d at 641-42 (footnotes omitted). All five factors must be established by the record before this Court will recognize the existence of plain error, and complete

consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Smith*, 24 S.W.3d at 283.

In general, the scope of opening and closing arguments is subject to the trial court's discretion. *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978). Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). Argument, however, must be temperate, "predicated on evidence introduced during the trial," and relevant to the issues being tried. *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994). Thus, the State must not engage in argument designed to inflame the passions of the jurors and should restrict its comments to matters properly in evidence at trial. *State v. Hall*, 976 S.W.2d 121, 158 (Tenn. 1998).

In *State v. Goltz*, this Court set out the following five recognized areas of prosecutorial misconduct related to argument of counsel:

> 1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
>
> 2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
>
> 3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
>
> 4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.
>
> 5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

111 S.W.3d 1, 5 (Tenn. Crim. App. 2003) (internal citations omitted).

When a reviewing court finds improper prosecutorial argument that does not rise to the level of a constitutional violation, five factors should be considered to determine whether a prosecutor's improper conduct could have affected the verdict to the "prejudice of the defendant." *State v. Philpott*, 882 S.W.2d 394, 408 (Tenn. Crim. App. 1994). The factors are: (1) the conduct complained of in light of the facts and circumstances of the

case; (2) the curative measures undertaken by the trial court; (3) the intent of the prosecutor in making the improper remarks; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case.  *Id.* (citing *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see also Goltz*, 111 S.W.3d at 5.

Keeping in mind that Defendant failed to object at trial and in the motion for new trial to any of the alleged instances of prosecutorial misconduct, we will review each allegation of prosecutorial misconduct in turn in order to determine if plain error relief is warranted.  First, Defendant complains that the State misled the jury by stating:

> [Defense counsel] wants you to believe that the state's proof is weak and flimsy just because he says it's weak and flimsy.
>
> . . . .
>
> He says these are well-educated people.  They knew they were making loans.  They took a risk and they should suffer for it.
>
> . . . .
>
> He wants you to think, you know, he says, my man's dishonest.  Mr. Torbett's dishonest because he didn't tell his wife.  Is that grasping at straws somebody trying to get you, you know, the finger of blame pointing right at his man.  He wants to take – you all to take that finger of blame and point it at Mr. Torbett because he didn't tell his wife.  Say, well, you know, there's where the dishonesty is.  It'[s] not my man who's being dishonest.

Defendant cites *State v. West*, 767 S.W.2d 387, 395 (Tenn. 1989), to support his argument that it is improper for counsel to indicate that defense counsel is seeking to mislead the jury.  In *West*, the court found error where the prosecutor accused defense counsel of throwing "sand in the eyes of the jury" and "blowing smoke in the face of the jury" but determined that the error was harmless in light of the overwhelming evidence of guilt of the defendant.  *Id.*  The case herein is distinguishable.  Counsel for the State merely restated the defense theory of the case and the arguments.  Moreover, the prosecutor did not breach a clear and unequivocal rule of law.  Defendant is not entitled to plain error relief.

Next, Defendant argues that the prosecutor improperly argued for a guilty verdict based on general deterrence.  He points to statements the prosecutor made in closing argument in response to Defendant's argument that he was not criminally responsible for

the thefts because none of the checks were made out to him personally but rather to the LLCs he created for business purposes. The prosecutor commented that

> anybody could come in here and set up an LLC and entice you into giving them your money, and sa[y], well, you gave it to an LLC not me. I know it's my LLC, but it's an LLC, so I'm not criminally liable for any of that and they just walk away . . . Don't let him get away with it."

Again, Defendant failed to object to this argument, and we are unable to determine if this was somehow a tactical decision on the part of trial counsel. Additionally, the prosecutor seemed to be responding directly to Defendant's theory that he was not guilty of theft because none of the checks were made out to him personally. While we recognize that argument based on general deterrence is improper, *see State v. Irick*, 762 S.W.2d 121, 131 (Tenn. 1988), Defendant has failed to show that all five factors necessary for plain error review are present. Accordingly, Defendant is not entitled to plain error relief.

Defendant also asserts that the prosecutor made improper comments designed to "play upon the prejudices and passions of the jury." Specifically, he points to the prosecutor's comments that the evidence presented at trial that showed Defendant used his "Christian lifestyle" and "dazzle[d] [the victims], if you will, with his friendship[,] his spirituality[,] and his ability to make money." Throughout the testimony at trial, the victims explained that Defendant ingratiated himself to them by praying with them, participating in devotionals, and even attending their church. While it is true that a prosecutor should not use argument calculated to inflame the passions of the jury, *see Cauthern*, 967 S.W.2d at 737, the prosecutor's comments herein can be viewed as a summary of the testimony of the victims, who repeatedly explained to the jury that they trusted Defendant, in part, because of his Christian lifestyle. The prosecutor did not breach a clear and unequivocal rule of law. Defendant is not entitled to plain error relief on this issue.

Defendant also claims that he is entitled to plain error relief because the prosecutor attempted to mislead the jury as to the law when he commented that money given to an LLC does not insulate "you from criminal liability." In this instance, Defendant objected to the statement of the prosecutor. The trial court informed the jury that it was responsible for charging the law in the case. We must presume that the jury followed the instructions of the trial court. *State v. Larkin*, 443 S.W.3d 751, 806 (Tenn. Crim. App. 2013). Plain error relief is not necessary to do substantial justice.

Defendant complains about the prosecutor's improper arguing of the missing witness inference and misleading the jury. Specifically, he points to the prosecutor's comments about Mr. Orr. During trial, one of the victims recounted Defendant's claims that there was another investor, a David Orr, who was going to repay a portion of the

loans to the victims. The prosecutor commented that the State brought Mr. Orr to testify, and Defendant pointed out that there might be "other David Orr's." The prosecutor then went on to say, "If there's another David Orr, where is he? . . . They could have brought the real David Orr down here . . . [b]ut they didn't bring him, did they? That's because there is no other David Orr."

Defendant argues on appeal that the State violated the rule set forth in *Delk v. State*, 590 S.W.2d 435 (Tenn. 1979), which requires that prior to commenting on a missing witness, the evidence in the record must show that the witness had knowledge of material facts, a relationship existed between the witness and the party that naturally inclined the witness to favor the party, and the missing witness was available to be subpoenaed to attend court. Defendant did not object to the comments made by the prosecutor at trial, and we cannot say that the defense did not waive the issue for tactical reasons. Defendant is not entitled to plain error relief on this issue.

Lastly, Defendant claims the prosecutor engaged in improper argument by intentionally referring to and/or arguing facts outside the record and essentially asking the jury to engage in speculation. Specifically, he points to the prosecutor's reference in rebuttal argument to a notation on the back of Exhibit 3, a $115,000 check written by Mr. Torbett to Brownstone Park Development. The prosecutor stated:

> On the back it is signed Brownstone Park Developments of Branden Toth. And there is something really interesting underneath that. It's not deposited. They give him back a cashier's check, a hundred and fifteen thousand dollars. You need to ask yourself, you all know what a cashier's check is. You know what you could do with it. It's not money that you can trace. Why would he do that? Why would he go to the bank and say, okay, here's a hundred and fifteen thousand dollars, sign for money? If you're a legitimate businessman[,] you're going to put that in your account . . . and you're going to do business like that. He doesn't do that. He says, ["]I want a cashier's check. You write me a cashier's check for a hundred and fifteen thousand dollars["] and they did. And he took that cashier's check and it got in his wallet. Exhibit Number 3. If that doesn't bowl you over nothing will.

Defendant argues on appeal that the prosecutor's comments were improper because the notation on the back of the check was not discussed at trial and no records from Defendant's bank accounts were introduced at trial. Again, Defendant failed to object to the argument at trial. Additionally, defense counsel responded to this argument by pointing out that the State failed to prove where Defendant had actually deposited the funds, so we cannot say that he did not waive the issue for tactical reasons. While we acknowledge that there is no testimony during the trial concerning the back of the check,

both the front and the back of the check were introduced as an exhibit at trial. The prosecutor was arguing inferences to be drawn from properly admitted evidence. No clear and unequivocal rule of law has been breached. Defendant is not entitled to plain error relief.

## II.  Lesser-Included Offenses

Defendant complains that the trial court failed to charge the jury with any lesser-included offenses. Specifically, he insists that the trial court should have charged the jury with all the lesser grades of theft and with attempt to commit theft in each count and that the failure to do so was error. The State disagrees, pointing to Defendant's failure to request the instructions in writing and the failure to include the issue in the motion for new trial to support its contention that Defendant waived the issue for appellate review.

The State is correct in noting the failure of Defendant to request jury instructions on the lesser-included offenses as mentioned above. Additionally, the State is correct in noting that the motion for new trial does not address the trial court's failure to charge lesser-included offenses. Thus, any review would be for plain error.

In Tennessee, "[a]bsent a written request, the failure of a trial judge to instruct the jury on any lesser[-]included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal." T.C.A. 40-18-110(c); *see also State v. Page*, 184 S.W.3d 223, 229-30 (Tenn. 2006). This Court may, however, review an issue which would ordinarily be considered waived if the court finds plain error in the record. *See* Tenn. R. Crim. P. 52(b). The party claiming plain error has the burden of persuading the appellate court. *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008).

The question of whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (citing *State v. Smiley*, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. *Id.*; *see State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). A trial court has a duty to provide "a complete charge of the law applicable to the facts of the case." *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)); *see also* Tenn. R. Crim. P. 30(d)(2). Tennessee law, however, does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992).

Whether a lesser-included offense must be charged in a jury instruction necessarily requires a two-step analysis. First, the trial court must determine whether an offense is a lesser-included offense; then, it must determine whether a charge is justified

by the evidence. *State v. Ely*, 48 S.W.3d 710, 722 (Tenn. 2001). Tennessee Code Annotated section 40-18-110(f) provides in relevant part that "[a]n offense is a lesser-included offense if: . . . (3) The offense is an attempt to commit the offense charged . . . ." There is no dispute that attempt is a lesser-included offense of theft. However, "[t]he mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense." *State v. Burns*, 6 S.W.3d 453, 468 (Tenn. 1999). Defendant herein waived his right to dispute the trial court's failure to instruct on any lesser-included offense by not filing a request or objecting to the instructions. *See* T.C.A. 40-18-110(c). Thus, this Court need not grant relief unless the failure to instruct constituted plain error.

In Defendant's case, it is clear that all five factors for plain error have not been established. Here, the record fails to establish that a substantial right has been adversely affected. An attempt instruction is not required if the only proof presented was proof of the completed crime as opposed to an attempt. *See, e.g.*, *State v. Marcum*, 109 S.W.3d 300, 304 (Tenn. 2003); *State v. Biggs*, 218 S.W.3d 643, 658 (Tenn. Crim. App. 2006); *State v. Chester Wayne Walters*, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *9 (Tenn. Crim. App. Nov. 30, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005). Moreover, Defendant's theory was that he did not have the requisite intent for the thefts—he maintained all along that the checks were made out to the LLCs as investments. An attempted theft would still require proof of intent to commit the crime. *See* T.C.A. § 39-12-101. The proof in this case did not support such an instruction. Therefore, the trial court properly instructed the jury.

Moreover, we determine that the trial judge effectively instructed the jury on the lesser amounts of theft. The jury verdict forms required the jury to determine the theft range. The Defendant is not entitled to relief as to this issue.

### III. *Notations on Verdict Forms*

Defendant next takes issue with the trial court's handwritten notations on the jury verdict forms. Specifically, Defendant complains that the trial court wrote "$10,000 but not more than $60,000" on the verdict forms for Counts 1, 2, 4, 5, and 6 and wrote "$60,000 or more" on Count 3. Defendant asserts that these handwritten notations constituted an impermissible comment on the evidence at trial. The State argues that Defendant waived the issue for failing to raise it in the motion for new trial and that the verdict forms are not included in the technical record.[4] Additionally, the State posits that the trial court's motive for writing on the verdict forms was "unclear."

---

[4] We are somewhat confused by the State's assertion about the verdict forms being absent from the technical record because, in our review of the record, they were found on pages 56-61 of the technical record transmitted to this Court by the trial court.

As the State notes, Defendant failed to object to the notations on the verdict forms at trial. Again, this Court has no obligation to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R .App. P. 36(a). Therefore this issue is waived. Additionally, no clear and unequivocal rule of law has been breached that would justify review for plain error. This Court reviews a trial court's verdict form under the same standard upon which we review the trial court's jury instructions. *Jordan v. CSX Transp., Inc.*, No. M1999-01415-COA-R3-CV, 2001 WL 378555, *9 (Tenn. Ct. App. Apr. 17, 2001), *perm. app. denied* (Tenn. Oct. 8, 2001). This Court will not invalidate the trial court's jury instructions as long as the legal issues involved are fairly defined and they do not mislead the jury. *Hunter v. Burke*, 958 S.W.2d 751, 756 (Tenn. Ct. App. 1997). In this case, the trial court merely wrote the range of value that mirrored the amount in the indictment for each count on the verdict form.[5] Defendant is not entitled to plain error relief on this issue.

## IV. *Motion for Judgment of Acquittal*

Defendant submits that it was error for the trial court to fail "to dismiss Count 4 of the indictment for a fatal variance and instead amend[] Count 4 and allow[] said count to go to the jury." Specifically, Defendant is referring to the exchange at the close of proof during which counsel for Defendant moved for judgment of acquittal as to Count 4 based on a fatal variance in the indictment. The State, on the other hand, contends that the trial court actually dismissed Count 4 and renumbered the remaining counts such that there is no error.

Because there is no evidence that Defendant raised the issue with the indictment prior to trial, we could conclude that Defendant waived his right to complain about the defect. *See* Tenn. R. Crim. P. 12(b)(1) & (f) (stating that defenses and objections based on some defects in the indictment must be raised prior to trial or they are considered waived); *see also Jackson v. State*, 475 S.W.2d 563, 565 (Tenn. Crim. App. 1971) (finding that objections to the form of the indictment are generally waived by the defendant going to trial without calling the defect to the trial court's attention); *Pope v. State*, 258 S.W. 775, 776 (Tenn. 1924) (maintaining that some defects in an indictment can be cured by the jury's verdict after the defendant pleads to the indictment and goes to trial). *But see McLean v. State*, 527 S.W.2d 76, 82 (Tenn. 1975) (asserting that a material

---

[5] With respect to Count 4, we note that the trial court's notations could have been error as they did not reflect the range of value in the original indictment. However, because we ultimately determine that the trial court submitted Count 4 to the jury on the lesser-included offense, it is unnecessary to find plain error as the range of value written on the verdict form reflects the range of value for the lesser-included offense.

variance in the indictment, between the offense charged and the evidence offered, is not normally waived).

Additionally, Defendant did not present this issue in the motion for new trial. Instead, he raises it for the first time on appeal. Thus, this Court need not grant relief unless the plain error exists, or in the alternative, this Court, in the exercise of its discretion, opts to consider the merits of the issue. *See Adkisson*, 899 S.W.2d at 636. However, review of the record necessitates review of the merits of Defendant's issue as explained more fully below.

As noted previously, the indictment for Count 4 charged Defendant with theft of property valued over $60,000 but specified the value of the stolen property was $40,000. The State conceded at the conclusion of the proof that there was a "variance in the indictment." The trial court then commented that the "proof is that the amount was forty thousand dollars. So that has to be granted from - - it's only ten to sixty thousand." In our view, this comment by the trial court indicated intent on the part of the trial court to grant the motion for judgment of acquittal as to the charged offense and submit the charge to the jury on the lesser-included offense of theft of property from $10,000 to $60,000.

This is supported by the jury charge submitted to the jury because it included a verdict form for "Count 4" which read that "the alleged theft was in the amount of ten thousand dollars or more, but not more than sixty thousand dollars." It appears, therefore that the trial court found Defendant not guilty of the charged offense and submitted Count 4 to the jury on the lesser-included offense of theft of property valued at $10,000 or more and less than $60,000. The judgment form for Count 4 reflects a conviction for theft of property valued over $10,000 with an offense date of November 4—the exact offense date alleged in Count 4 of the indictment. Defendant argues that he did not consent to this "constructive amendment" of the indictment. A constructive amendment of the indictment which "occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged[,]" automatically requires a reversal "because the defendant may have been convicted on a ground not charged in the indictment. . . ." *State v. Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001) (citing *U.S. v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985)). In this case, Defendant was indicted for theft of property valued over $60,000 which necessarily included the lesser-included offense of theft of property valued between $10,000 and $60,000. Thus, there is no constructive amendment of the indictment—the trial court merely charged the jury with a lesser-included offense. Defendant is not entitled to relief on this issue.

*V. Sufficiency of the Evidence*

- 17 -

Defendant challenges the sufficiency of the evidence with respect to his convictions for Counts 1, 2, 3, 4, and 6 on the basis that the proof was insufficient to establish that he exercised control over the funds with the intent to permanently deprive the owners. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Furthermore, questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *Wagner*, 382 S.W.3d at 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "'[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the

evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*.; *Dorantes*, 331 S.W.3d at 379.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Obtaining property may be accomplished by larceny, larceny by trick, larceny by conversion or obtaining property by false pretenses. T.C.A. § 39-11-106(a)(24)(B). Consent is not effective when it is "[i]nduced by deception or coercion." T.C.A. § 39-11-106(a)(9)(A). "Deception" means that a person knowingly:

> (i) Creates or reinforces a false impression by words or conduct, including false impressions of fact, law, value or intention or other state of mind that the person does not believe to be true;
>
> (ii) Prevents another from acquiring information which would likely affect the other's judgment in the transaction;
>
> (iii) Fails to correct a false impression of law or fact the person knows to be false and:
>
> > (a) The person created; or
> >
> > (b) Knows is likely to influence another;
> >
> > . . . .
>
> (v) Employs any other scheme to defraud; or
>
> (vi)(a) Promises performance that at the time the person knew the person did not have the ability to perform or that the person does not intend to perform or knows will not be performed, except mere failure to perform is insufficient to establish that the person did not intend to perform or knew the promise would not be performed;
>
> > (b)Promising performance includes issuing a check or similar sight order for the payment of money or use of a credit or debit card when the person knows the check, sight order, or credit or debit slip will not be honored for any reason; . . . .

*Id.* at (a)(6)(i)-(vi).

The proof at trial, in a light most favorable to the State, shows that Defendant obtained a total of $170,000 from Mr. Torbett, $10,000 from Mr. Reid, and $100,000 from Dr. and Mrs. Backus. The victims all thought that they were giving the money to Defendant for investment in real estate and that they would receive a high rate of return on their initial investment in two to three months' time. When the victims did not receive any money from Defendant and Defendant was asked when the money would be returned, Defendant made numerous excuses without ever repaying the money to the victims. Moreover, Defendant left town without notifying the victims. Additionally, Dr. Backus testified that he continued to have faith in Defendant when the others began to get increasingly angry. To support Defendant, Dr. Backus gave Defendant a check for $35,000 payable to CMD Assets in order to repay a portion of Mr. Torbett's investment. The money was never returned to Mr. Torbett. Finally, even when asked, Defendant was unable to produce any documents indicating that he ever bought or sold real estate with the money that the victims provided to him for investment purposes. There was sufficient evidence from which a jury could have found Defendant guilty of theft in Counts 1, 2, 3, 4, and 6. Defendant is not entitled to relief on this issue.

## VI. Sentencing

Defendant complains that his sentence of twelve years is excessive because the trial court failed to consider that the sentence be the "least severe measure necessary" to achieve the purposes for which the sentence was imposed. Also, Defendant complains that the trial court did not consider restitution, victim compensation, or community service. The State posits that Defendant was not eligible for an alternative sentence because he was sentenced to more than ten years in incarceration. Additionally, the State insists that the trial court did not abuse its discretion in sentencing Defendant to a within-range sentence.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *State v. Kyto Sihapanya*, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014) (per curiam order) (internal quotation marks omitted). This deferential standard "does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

A trial court must consider all of the following when fashioning a proper sentence:

(1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment.

*Id.* at *1 (citing T.C.A. §§ 40-35-102, -103, -210(b)(1)-(7)).

Tennessee Code Annotated section 40-35-103(1) dictates that sentences involving confinement must be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

We disagree with Defendant's position that the trial court failed to place the proper reasons for its decision on the record. To the contrary, the trial court noted its reasons for sentencing Defendant to a twelve-year effective sentence. It applied and gave great weight to one enhancement factor, factor (1)—that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his appropriate range. T.C.A. § 40-35-114(1). With regard to mitigating factors, the trial court noted that Defendant's actions neither caused nor threatened serious bodily injury but found that the enhancement factor far outweighed the mitigating factor. T.C.A. § 40-35-113(1). The trial court discussed Defendant's "talent" that he used "to enrich himself" and even noted that there was a "sucker born every minute." However, these editorial comments do not detract from the presumption of reasonableness accompanying the trial court's decision. Because the trial court followed the sentencing guidelines as well as our

supreme court precedent in *Bise* in imposing a within-range sentence, the trial court's decision is accompanied by a presumption of reasonableness that we will only review for abuse of discretion. Based upon the record developed at trial and at sentencing, we cannot conclude that the trial court abused its discretion in sentencing Defendant to a twelve year sentence. Additionally, as Defendant is sentenced to more than ten years, he is not eligible for probation. *See* T.C.A. § 40-35-303(a).

Restitution

Defendant lodges an additional complaint to his sentence—that the trial court's failure to order restitution somehow invalidates his sentence. While we agree that the trial court was required to order restitution, *see* T.C.A. § 40-20-116, and the failure to do so was error, we fail to see how the error completely invalidates the effective twelve-year sentence. Moreover, we note that the State filed a motion seeking to have the trial court order restitution. Because the motion was filed after the filing of the notice of appeal, the trial court did not have jurisdiction to consider the motion. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). Defendant's sentence is affirmed. However, we must remand the matter to the trial court for a determination of the amount of restitution on Counts 1, 2, 3, 4, and 6. On remand, the trial court should be mindful that "in theft cases *not involving restitution as a condition of probation*, section 40-20-116(a) restitution may not exceed either the value assessed by the jury or the theft-value range reflected in the jury's verdict." *State v. Patricia White & Craig White*, No. W2003-00751-CCA-R3-CD, 2004 WL 2326708, at *23 (Tenn. Crim. App. Apr. 13, 2004)(emphasis added), *no perm. app. filed*.

To be clear, the sentence imposed by the trial court did not include probation and we do not conclude that such a finding was error. Nor do we suggest that on remand the trial court should fashion a sentence that includes probation. We simply order that on remand, the trial court make a determination of the amount of restitution. This can only be accomplished with a hearing.[6] After a hearing, the judgment forms should be amended to include restitution for each count.

*VII. Count 5*

When we initially reviewed the technical record, we noted that the indictment contained a Count 5, alleged to have occurred on November 4, 2009, and involving the theft of $15,000 from Dr. and Mrs. Backus. However, at the beginning of trial, the

---

[6] According to the testimony and exhibits 7 and 8 at the sentencing hearing, Defendant has paid $39,529.89 in restitution to victim Hanes Torbett as part of a civil judgment obtained by the Torbetts. Defendant may have paid additional amounts in restitution since the sentencing hearing. This should be determined by the trial court on remand at the hearing on restitution and the judgment forms for either count 2 or 3 should reflect this credit to the remaining restitution owed the Torbetts.

assistant district attorney did not read Count 5 of the indictment to the jury.  Counts 1, 2, 3, 4, 6, and 7 were read to the jury.  Then, at the conclusion of the proof, the trial court submitted a "Count 5" to the jury for theft of property over $10,000 but less than $60,000.  The jury found Defendant not guilty of this offense.  The judgment form indicates an offense date of November 4, 2009, but does not specify a victim or an amount of money.

Generally, the first thing to happen in a trial after the jury is sworn is that the indictment is read to the jury.  Our supreme court has stated that the reading of the indictment "is an appropriate and proper procedure.  The indictment at best is a mere accusation to inform the jury of the charges against the defendant." *State v. Bane*, 853 S.W.2d 483, 484 (Tenn. 1993).  However, we note that there is no statute or rule requiring the indictment to be read at the outset of trial.

In our review of the record, we have determined that Count 5 of the original indictment was dismissed.  Count 5 of the indictment involved the theft of $15,000 from Dr. and Mrs. Backus.  Prior to the submission of the case to the jury, the trial court reminded counsel for the State to make a new copy of the indictment without the original Count 5 that was previously "dismissed."  Both counsel for the State and Defendant acknowledged on the record that Count 5 had been dismissed.  At that point, counsel for the State offered to renumber the remaining counts of the indictment so that there was no missing number.  The parties agreed.  Thus, at that point it follows that original Count 6 became Count 5 and original Count 7 became Count 6.  This conclusion is supported by the testimony at trial.  During the testimony of Mrs. Backus, counsel for Defendant objected when she started to discuss a $15,000 check written by her husband to "help with foreclosure."[7]  Counsel for the State responded by informing the witness "that's not a deal we're looking at here today."  Moreover, during the testimony of Dr. Backus, he discussed the $25,000 check that he wrote with the notation "a new start" was written so that Defendant could teach him about the business.  Exhibit 9, provided in the technical record is the $25,000 check.  At the bottom of the exhibit is the notation "Count 5." While counsel for Defendant moved at the end of proof to dismiss "Count 6"[8] involving the $25,000 check and the trial court reserved a ruling on the motion, the trial court ultimately deemed the motion moot because the jury found Defendant not guilty of that count.  The verdict form reflects that Defendant was found not guilty in Count 5.

*VIII.  Judgment Forms*

---

[7] The $15,000 check written to help with a foreclosure was also discussed during the hearing on the motion to sever by Dr. Backus.

[8] It appears that Counsel for Defendant was referring to the original Count 6 which was renumbered as Count 5.

While not raised by either party, we note that the judgment form in Count 3 reflects a conviction for the class B felony offense of "theft over $10,000." The re-indictment in Count 3 charged Defendant with theft of property valued at $60,000 or more, a class B felony. T.C.A. § 39-14-105(a)(5). The verdict form indicates that the jury found Defendant guilty as charged in the re-indictment, of the class B felony of theft of property valued at $60,000 or more. On remand, the trial court should enter a corrected judgment form to reflect the conviction in Count 3 of theft of property at $60,000 or more.

Additionally, we note that the judgment forms in Counts 5 and 6 contain the incorrect offense dates. Comparing the dates of offenses and description of offenses in the indictment and renumbered counts of the indictment with the judgment forms, we are unable to find a judgment for an offense occurring on January 2, 2010, the date on which original Count 7 (renumbered Count 6) was alleged to have occurred. Therefore, the offense date on the judgment form in Count 6 should be corrected to January 2, 2010. Renumbered Count 5 (originally Count 6), should be corrected to reflect an offense date of December 16, 2009.

*Conclusion*

The convictions are affirmed and the matter is remanded for correction of the judgment forms in Counts 3, 5, and 6 and for a hearing to determine the amount of restitution in counts 1, 2, 3, 4, and 6.

_____
TIMOTHY L. EASTER, JUDGE